MARTHA HARVEY WARDNER, Appellant, *vs.* THE SEVENTH DAY BAPTIST MEMORIAL BOARD *et al.* Appellees.

*Opinion filed February 20, 1908.*

1. WILLS—*codicil revokes only so much of will as is inconsistent with it.* In construing a will and codicil the disposition of the property made by the will should not be disturbed further than is absolutely necessary to give effect to the codicil.

2. SAME—*what may be considered in construing will.* In construing ambiguous provisions of a will or codicil, the relation of the parties, the nature and situation of the subject matter, the purpose of the instrument and the motives which may be reasonably supposed to have influenced the testator in the disposition of his property may be considered.

3. SAME—*when codicil does not give power to sell fee.* Where a will makes provision for the testator's wife, child and grandchild and gives the residue in trust for three religious societies, a codicil, made after the wife's death, withdrawing all reference to her, and providing that the testator's second wife "shall have all that remain of the property which I shall die seized, * * * to use, dispose of and control according to her own judgment during her natural life," and at the death of the second wife "all that remains after paying the legacies to my children and grandchildren shall be divided among the three societies as named in my will," does not empower the second wife to sell the fee of the property.

4. SAME—*when first codicil is not revoked by second one.* A codicil giving to the testator's son, in addition to the legacy given

him by the will, a life estate in the income from certain real estate, is not revoked by a second codicil giving to the testator's second wife a life estate in all that remains of the testator's property after paying the legacies specified in the will, where the second codicil also provides that any children born to the testator by the second wife shall have the same amount, each, as is bequeathed to the testator's son, "as estimated by three competent, disinterested judges," since no estimate would be necessary if the life estate given by the first codicil were not to take effect.

APPEAL from the Circuit Court of Cook county; the Hon. G. A. CARPENTER, Judge, presiding.

On October 10, 1905, appellant filed her bill in the circuit court of Cook county, Illinois, to clear title to certain lands, and for other relief.   Demurrer was sustained to the bill as amended, and, upon appellant electing to stand by said bill, the same was dismissed for want of equity, and an appeal was taken to this court.

The amended bill sets forth that Nathan Wardner, late of Rock county, Wisconsin, on April 20, 1885, published his last will and testament, and later on made two codicils thereto, (a copy of the will and codicils being given in the bill,) which, so far as relates to the questions involved in this case, provide substantially as follows:

The original will provides for payment of just debts and funeral expenses.   To wife, Olive Brown Wardner, her heirs and assigns forever, the dwelling house he then occupied as a homestead in Wisconsin, together with furniture, etc., therein; also stock in Illinois Land and Loan Company.   To son, Morton S. Wardner, $4000, to be paid within one year of testator's decease, less certain advancements. To each of grandchildren who survive him, $200, to be invested and the principal and accumulations to be paid them upon their respective attainment of majority.   Disposes of watch to grandson, N. S. Wardner, and provides for monument.   "All the rest and residue of my estate, real, personal or mixed, of which I shall die seized and possessed or to

which I shall be entitled at the time of my decease, meaning the proceeds thereof, I give and bequeath to the Seventh Day Baptist Memorial Board upon the following trust and conditions, to-wit: That said board shall divide and pay the same as follows: One-third thereof to be paid to the American Tract Society, known as the American Sabbath Tract Society for Publishing Sabbath Literature; one-third thereof to be paid to Alfred University, in the State of New York, to be used for its benefit and support in such manner as the board of trustees of said university shall deem fit and proper; and one-third thereof to be paid to the Seventh Day Baptist Missionary Society; and upon this further trust and express condition, that the said Seventh Day Baptist Memorial Board shall pay or cause to be paid out of said legacy, divided as aforesaid, an annuity of $500 per annum to my wife, Olive Brown Wardner, payable semi-annually during her natural life." If Morton S. dies before testator, or any surviving grandchild dies before reaching majority, the portion of such beneficiary shall go to the Seventh Day Baptist Memorial Board, as part of the general fund. "Also, I will and ordain that the executor of this my last will and testament, for and towards the full and faithful performance of my said testament, shall, with all convenient speed after my decease, bargain, sell and alien in fee simple and dispose of all my estate, real, personal or mixed, of which I shall die seized and possessed or to which I shall be entitled at the time of my decease, wherever situated, except that which I have hereinbefore devised to my said wife and grandson, N. S. Wardner; and for the doing, executing and perfect finishing whereof I do by these presents give to my said executor full power and authority to grant, alien, bargain, sell, convey and assure and dispose of all said property, real, personal or mixed, with the exception last above noted, to any person or persons and their heirs forever, in fee simple." Appoints his nephew, Horace Wardner, as executor.

The first codicil, dated January 3, 1888, omitting the attestation clause, reads: "I, Nathan Wardner, of Milton Junction, Wisconsin, made my will bearing date April 20, 1885, and do now make this codicil to be taken as a part of the same. I ratify said will in every respect, save so far as any part is inconsistent with this codicil. I give and bequeath unto my son, Morton S. Wardner, all rents, issues and profits of premises in the city of Chicago known as 1260 and 1262 West Harrison street, being two brick tenements, taxes and insurance thereon deducted, the same to be given him after my decease, to have, use and enjoy the same during his natural life, repairs thereon to be made at the expense of the said Morton, and in case he should die first, then this codicil to be of no effect."

The second codicil, dated July 29, 1890, omitting the signature and attestation clause, and provisions as to alternate executor, gift of a watch and erecting monument, reads as follows: "I, Nathan Wardner, of Milton Junction, Wisconsin, a clergyman, do make this my codicil, hereby confirming my last will made on the 20th day of April, 1885, and my former codicil made January 3, 1888, so far as this codicil is consistent therewith, and do hereby state: First, my former wife, Olive Brown Wardner, having died since the date of my said will and I having taken another wife, am impressed with the importance of changing my will by adding to said will another codicil. That all reference made in said will to the said Olive Brown Wardner I hereby withdraw. And the name of my present wife is Martha Harvey Wardner, and she shall have all that remain of the property which I shall die seized, and after paying my son, Morton S. Wardner, and the grandchildren, as specified in said will, is to use, dispose of and control according to her own judgment during her natural life, and if she shall have children by me, they shall have at their majority, or their survivors of them, the same amount, each, as is bequeathed to my son, Morton S. Wardner, as estimated by three competent,

disinterested judges to be appointed by the judges of probate before whose court my will shall be proven. At the decease of my said wife, Martha Harvey Wardner, all that remains after paying the legacies made to my children and grandchildren shall be divided among the three societies as named in my will."

The amended bill further sets out that the testator died April 6, 1894; that the will and codicils were admitted to probate in Rock county, Wisconsin, and Horace Wardner was appointed executor; that exemplified copies of the will and codicils, order of probate and letters testamentary were filed in Cook county, Illinois; that said executor received and disposed of all the personal estate in accordance with the will, except $400, and income therefrom, held for two of the grandchildren; that the executor departed this life and appellant was appointed administratrix *de bonis non* with the will annexed; that testator died seized of a number of houses and lots and some vacant property in Chicago and vicinity, besides the homestead in Wisconsin, the average net annual rental realized by complainant from the real estate being $472.26; (the gross annual rental appears to be $1424, of which appellant appears to have been receiving $848 and the son $576 from his life interest;) that the complainant is, and has been for a number of years, in feeble health and unable to earn her own living, and is a patient at a sanitarium, under care of a physician; that in order to continue at said sanitarium she sought to dispose of certain lots, but was unable to do so because the various institutions mentioned in the will claim that the title is vested in them; that Morton S. Wardner, and Eva Wardner, his wife or divorced wife, insist that they are entitled to the income from two of the houses and lots in Chicago, and are in receipt of said income; that their acts are contrary to equity, and the interest of complainant in said lots should be determined by the court and that the rights and interest of all parties may be ascertained and declared; that

the title to the whole of the real estate vested in the said Seventh Day Baptist Memorial Board, and other institutions named in the will, may be declared subject to the power of sale vested in complainant, and that their interest may be removed as a cloud on her title; also prays for general relief.

N. W. HACKER, for appellant.

B. F. LANGWORTHY, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The chief subject of contention is whether the second codicil to the will gave appellant power to sell the real estate in fee and consume or dispose of the proceeds. In reaching a conclusion on this matter it is necessary to construe the two codicils in connection with the will.

In construing a will and codicil it is the general rule that the disposition made by the will should not be disturbed further than is absolutely necessary to give effect to the codicil. The codicil revokes only so much of the will as is inconsistent with it. (*Vestal* v. *Garrett*, 197 Ill. 398; *Meckel* v. *Johnson*, 231 id. 540.) "The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." (*Smith* v. *Bell*, 6 Pet. 68; *Bradsby* v. *Wallace*, 202 Ill. 239.) In seeking the intention of the testator as to the construction and interpretation that should be placed upon ambiguous terms or clauses in a will, the relation of the parties, the nature and situation of the subject matter, the purpose of the instrument and the motives which might reasonably be supposed to influence him in the disposition of his property may properly be considered. (*Smith* v. *Bell*, *supra;* 17 Am. & Eng. Ency. of Law,—2d ed.—p. 21;

17 Cyc. 673, and cases cited in each.)    In discovering the intention of the testator by judicial construction, the courts should apply natural methods of finding and weighing evidence.  *Peet* v. *Peet,* 229 Ill. 341.

The original scheme of the testator was to provide for his wife, his son, grandchildren and three societies.  His first wife having died, he, having married again, found it necessary to change his will, and thereupon made a provision for appellant, his second wife.  He also made a provision as to any children that might be born of his second wife, but as there are none that condition is not here important.  He left only one child.  Testator was a clergyman, and it is obvious from the will and codicils that he was deeply interested in the religious and spiritual welfare of his fellow-men.  He left no real estate in fee to his son or grandchildren.  There is nothing in the entire document to indicate that he intended that his son or grandchildren should be supported and maintained out of the estate.  Unless the second codicil of the will should be construed as giving the wife the power to dispose of and use for herself the principal of the real estate, it is very clear that, outside of the legacies provided for, he intended to have the bulk of the principal of his estate left to the three societies rather than to his wife or heirs.  It would hardly be reasonable to suppose, from anything in this record, that testator intended to make more liberal provisions for appellant, his second wife, than he did for the first wife, the mother of his child and presumably the one who assisted him in accumulating his property.  From the language of the will, viewed in the light of surrounding circumstances, the condition of testator's property and of his family, his relation to the legatees and devisees, it would not be the natural presumption that testator intended that appellant should have the power to cut off absolutely the three societies named.

As we understand appellant's contention, *it is that she has the right to sell any or all of the property of testator*

in fee simple and use or consume as much of the proceeds as she desires, subject to the payment of the legacies to the son and grandchildren. It is a general rule in all cases where by the terms of the will there has been an express limitation of an estate to the first taker for life and a limitation over, with general expressions apparently giving the tenant for life an unlimited power over the estate but which do not in express terms do so, that the power of disposal is only co-extensive with the estate which the devisees take under the will, and means such a disposal as the tenant for life could make, unless there are other words clearly showing that a larger power was intended. (*Welsch* v. *Belleville Savings Bank,* 94 Ill. 191; *Henderson* v. *Blackburn,* 104 id. 227.) Do the words "use, dispose of and control according to her own judgment during her natural life," in said codicil, give appellant the power to sell and dispose of the fee in the property?

In *Boyd* v. *Strahan,* 36 Ill. 355, a will provided that the wife should have the balance of money and all personal property not enumerated or otherwise disposed of by the will, "to be at her own disposal and for her own proper use and benefit, during her natural life." It was there held that these words meant only that she should have such disposition as a tenant for life could make.

In *Kennedy* v. *Kennedy,* 105 Ill. 350, the will provided that after the payment of just debts and expenses the testator gave his homestead to his wife, to have "during her life, to occupy and use the same or dispose of it at her will and pleasure, and use and control the proceeds thereof." It was held that the will gave the wife only a life estate and the power of disposition in her was limited to the life estate.

In *Brant* v. *Virginia Coal and Iron Co.* 93 U. S. 326, the will devised to the wife a life interest in certain property, "to do with as she sees proper before her death." It was there held that this only conferred a power to deal with the property as a life estate.

In *Smith* v. *Bell, supra,* the will gave the wife personal property "for her own use and benefit and disposal, absolutely." The estate was not expressly limited to her life but a remainder was limited to her son, and the court there held that the widow's power of disposal of the personal property in question was merely such a power as might be made by a person having a life estate, only, in said property.

The testator has used in this codicil the words, "all that remain of the property" after paying legacies, and again, "all that remains after paying the legacies." We think these quoted phrases are used in both cases with substantially the same meaning, and that they mean all that "remains" after paying the legacies in question. On the construction that has been placed upon similar words by this court in *Siegwald* v. *Siegwald,* 37 Ill. 430, *Welsch* v. *Belleville Savings Bank, supra, Green* v. *Hewitt,* 97 Ill. 113, and *Thompson* v. *Adams,* 205 id. 552, it is evident that these words do not necessarily manifest an intention to create a power in the life tenant to dispose of the whole estate. Under these authorities our conclusion is that the testator intended to give to appellant only a power of disposal co-extensive with the life estate. There are no words in the will clearly indicating that the larger power was intended. *Mansfield* v. *Mansfield,* 203 Ill. 92; *Metzen* v. *Schopp,* 202 id. 275; *Vanatta* v. *Carr,* 223 id. 160.

Appellant cites and relies upon *Coulson* v. *Alpaugh,* 163 Ill. 298, *Skinner* v. *McDowell,* 169 id. 365, and *Kirkpatrick* v. *Kirkpatrick,* 197 id. 144, as laying down a contrary doctrine. The wills in question in these last three cases gave the life tenants, in terms, the power to sell or dispose of the property in fee simple. In the first case the words of the will were, "with full power to use and dispose of, to sell, and re-invest the proceeds in lands or otherwise." In the second case the will read: "That all the residue of my estate, personal and real, shall be held by my wife, * * * to be sold, retained and exchanged, used and managed by

her as she may think proper during her life." In the third case the will read: "I give to my wife, during her life, to manage, rent or sell, as she may direct." There is nothing said in these cases, or in *Markillie* v. *Ragland,* 77 Ill. 98, and *Funk* v. *Eggleston,* 92 id. 515, that in any way conflicts with what has been heretofore said.

The appellant further insists that if this codicil does not give the power to dispose of the fee in the real estate, then that under the authority of *Gavin* v. *Curtin,* 171 Ill. 640, the widow should be entitled to have the property sold and the proceeds used for her maintenance and support. This last case held that a court of equity might take jurisdiction to dispose of real estate in which there was a life tenancy and re-invest the proceeds for the benefit of the life tenant and the remainder-man, where it appeared that unless equity interfered the property would be lost to both the life tenant and the remainder-man. There is nothing said in that case that would justify the conclusion that this court would have the right to construe this will so that the property could be disposed of and a part of the principal used for the support of appellant.

Appellant contends that the second codicil revoked the first codicil, and that the son, Morton S. Wardner, does not, under the will as it now stands, have a life interest in the real estate known as 1260 and 1262 West Harrison street, Chicago; that the second codicil, in referring to the legacies to be paid said Morton S. Wardner, intended only the money legacy. If this construction be placed upon the second codicil, then it, in effect, renders meaningless that portion of said second codicil which provides that in case the appellant shall have children by the testator, they shall have, or their survivors, at majority, the same amount as said Morton S. Wardner, "as estimated by three competent, disinterested judges to be appointed by the judges of probate before whose court my will shall be proven." There would be no necessity for having three persons estimate the

amount to be given to said children of the appellant if the money legacy of $4000, only, was being considered. An executor or the court could readily figure out the amount if such were the construction. When one construction of a will renders a portion of it meaningless and another gives effect to all the words used, the latter must be adopted. (*Fisher* v. *Fairbank,* 188 Ill. 187; *Hubbard* v. *Hubbard,* 198 id. 621.) The life estate of appellant must be held subject to the life estate of the son, Morton S. Wardner.

In the view that we have taken of the questions already considered it will be unnecessary to decide the other points raised in the briefs.

The appellant took only a life estate, with the power of such disposition as a tenant for life could make. The circuit court therefore properly dismissed the bill for want of equity, and its decree will be affirmed.

*Decree affirmed.*